UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

NIKKI BOWNS,

        Plaintiff,        Civil Action No.: 14-11520
                                       Honorable Sean F. Cox
        v.                   Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 19, 22]**

      Plaintiff Nikki Bowns appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for child and adult Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, which were referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Court finds that the administrative law judge ("ALJ") erred in the weight she afforded the treating psychiatrist's opinion, and that this error is not harmless. For these reasons, the Court **RECOMMENDS** that:

- the Commissioner's motion **[R. 22]** be **DENIED**;

- Bowns's motion **[R. 19]** be **GRANTED IN PART AND DENIED IN PART**; and,

- the Commissioner's decision be **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendation.

I.   **BACKGROUND**

   A.   **Bowns's Background and Claimed Disabilities**

Bowns was seventeen years of age at the time of her application and turned eighteen three days later. [R. 11-5, Tr. 129-34]. She dropped out of high school in the tenth grade, and subsequently made some attempts to obtain her GED without success. [R. 11-2, Tr. 52; R. 11-7, Tr. 282, 318, 324, 434]. She never worked full time. [R. 11-2, Tr. 46-48]. Bowns applied for child and adult SSI benefits alleging disabling mental conditions including bipolar disorder, oppositional/defiance disorder, borderline personality disorder and attention deficit disorder. [R. 11-3, Tr. 81-88; R. 11-6, Tr. 146; R. 11-7, Tr. 210, 221-22].

   B.   **Procedural History**

Bowns's application was denied initially, and she filed a timely request for an administrative hearing, which was held on October 10, 2012. [*Id.*, Tr. 81-88, 92; R. 11-2, Tr. 36-70]. At the hearing, an ALJ heard

testimony from Bowns and a vocational expert ("VE"). [R. 11-3, Tr. 36-70]. In a November 20, 2012, written decision, the ALJ found Bowns not disabled under either the child or adult standard. [*Id.*, Tr. 8-35]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner for purposes of this review. [*Id.*, Tr. 1-6].

### C. The ALJ's Application of the Disability Framework

SSI is available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A), 1382c(a)(3)(C)(i).

The Commissioner determines whether an applicant is disabled by engaging in a step-by-step analysis. The analysis for child disability involves three steps, determining: (1) whether the child is engaged in "substantial gainful activity"; (2) whether the child has a "severe" impairment;[1] and (3) whether the child's impairment meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404,

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

3

Subpart P, Appendix 1 ("Listings").  *See* 20 C.F.R. §416.924(a).  Functional equivalence is demonstrated by the existence of an "extreme" limitation in one of six domains, or a "marked" limitation in two of the six.  20 C.F.R. § 4156.926a(d).  An extreme limitation is one that interferes "very seriously" with a claimant's ability to independently initiate, sustain and/or complete activities.  20 C.F.R. § 416.926a)(e)(3)(i).  A "marked" limitation exists where the impairment interferes "seriously" with these abilities.  20 C.F.R. § 416.926a(e)(2)(i).  If the impairment or combination of impairments does not meet or medically or functionally equal a listing, the child is not disabled.  20 C.F.R. §416.924(a).

    The first two steps of the adult analysis track the sequence above.  20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).  At step three of the adult analysis, however, the ALJ must determine only whether the claimant's severe impairments meet or medically equal a listed impairment.  *Id.*  Next, the ALJ assesses the claimant's residual functional capacity ("RFC") and, at step four, will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the ALJ reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to

4

the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

The ALJ found that, prior to becoming an adult, Bowns suffered from bipolar disorder, borderline personality disorder, and oppositional defiance disorder. [R. 11-2, Tr. 16]. She determined that none of Bowns's impairments met, medically equaled or functionally equaled a listed childhood impairment, finding less than marked limitations in four domains, including: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, and (4) caring for yourself; and no limitations in the two other domains: (1) moving about and manipulating objects, and (2) health and physical well-being. [*Id.*, Tr. 16-23]. As a result, Bowns was found not disabled prior to turning eighteen. [*Id.*, Tr. 23].

Applying the five-step adult analysis, the ALJ determined that Bowns suffered from the same impairments, and that none of these impairments met or medically equaled a listing, specifically considering Listings 12.04 (Affective disorders) and 12.08 (Personality disorders). [*Id.*, Tr. 24]. In making this determination, the ALJ concluded that Bowns had no more than moderate limitations in activities of daily living, social functioning, and maintaining concentration, persistence and pace, with no episodes of

decompensation.  [*Id.*, Tr. 24-25].

Next the ALJ assessed Bowns's RFC, finding her capable of work at all exertional levels as long as it involved making only simple work-related decisions, simple, routine tasks, no interaction with the general public, only occasional interaction with coworkers and supervisors and permitted some time off-task that could be accommodated by normal breaks.  [*Id.*, Tr. 26]. As Bowns had no past relevant work, the ALJ proceeded directly to step five, where the VE, when posed a hypothetical containing these limitations, testified that such a claimant could perform the jobs of hospital cleaner (4,173 jobs in the state), industrial cleaner (22,700 jobs), or kitchen helper (5,639 jobs).  [*Id.*, Tr. 67-68].  Relying on this testimony, the ALJ concluded that Bowns could perform a significant number of jobs in the national economy and thus was not disabled.  [*Id.*, Tr. 30].

## II.   ANALYSIS

### A.   Standard of Review

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

With these standards in mind, this Court finds that the ALJ's determination that Bowns is not disabled is not supported by substantial evidence.

### B.  Weight Afforded to Treating Physician Opinion

On October 4, 2012, psychiatrist Dr. Harold Lenhart, who treated Bown since 2008 (sporadically until August 2011, when treatments became monthly), offered an opinion on her mental capacity to perform basic work activities. [R. 11-8, Tr. 527-32]. He found that she suffered from bipolar

7

disorder, PTSD,[2] and schizotypal personality, characterized by appetite disturbance with weight change, sleep disturbance, personality change, mood disturbance, emotional labiality, pervasive loss of interest, suicidal ideation or attempts, oddities of thought, perception, speech or behavior, social withdrawal or isolation and blunt, flat or inappropriate affect. [*Id.*, Tr. 527]. He opined that her conditions result in marked difficulties in maintaining social functioning, with one to two episodes of decompensation. [*Id.*, Tr. 530].

Dr. Lenhart then marked off spaces indicating that Bowns's conditions constituted a chronic disorder, at least two years in duration, resulting in more than minimal limitation in the ability to do work, with (1) repeated episodes of decompensation; (2) a residual disease process resulting in marginal adjustment such that minimal increase in demands could be predicted to result in decompensation; and (3) a current history of one or more years' inability to function outside of a highly supportive living arrangement. [*Id.*]. He further identified marked limitations in Bowns's ability to work with others without distraction, complete a full work-day or week without interruption from psychological symptoms, interact appropriately with the public, supervisors and co-workers, and maintain

---

[2] Dr. Lenhard indicated that Bowns had a history of physical abuse by her biological mother and a traumatic brain injury. [R. 11-8, Tr. 527].

socially appropriate behavior. [*Id.*, Tr. 531-32]. Dr. Lenhart believed Bowns would have difficulty working at a regular job due to social isolation and oddities of thought and behavior, and would miss more than three days of work a month due to her conditions. [*Id.*, Tr. 529].

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinion regarding the nature and severity of a claimant's condition when that opinion is well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. In all cases, a treating physician's opinion is entitled to great deference. *Id.*

The ALJ afforded "little weight" to Dr. Lenhart's opinion, finding it based mainly on subjective reports and "contrast[ing] with the other evidence of record." [R. 11-2, Tr. 28]. Bowns argues that the ALJ failed to articulate supportable good reasons for rejecting Dr. Lenhart's opinion. The Court agrees.

9

Contrary to the ALJ's finding, Dr. Lenhart's opinion was consistent with the record as a whole, including his objective observations, and records from Bowns's previous psychiatrist, therapist and case managers, who all corroborated Bowns' subjective reports. At times, Bowns appeared to them to be friendly, positive, cooperative and verbal, with a stable mood. [R. 11-7, Tr. 288-89, 297-98, 316, 318, 323, 356-57, 363-66, 370, 372, 380-81, 383, 386-87, 390, 399, 401-402, 428, 430, 456-58, 464, 481]. Equally as often she was depressed, stressed, labile, flat, morose, irritable, hostile, inappropriate and/or nonresponsive. [*Id.*, Tr. 358, 367, 369, 360, 371, 382, 384, 388-89, 391-92, 395-98, 403, 430, 432, 453, 459-60, 469, 476, 478, 482-83, 489, 506]. Bowns frequently talked about suicide, and overdosed on one occasion. [*Id.*, Tr. 217, 227, 245, 280, 285, 360, 469, 487, 493, 495, 500]. She cut herself numerous times between 2008 and 2012. [*Id.*, Tr. 208, 212, 217, 240, 245, 280, 290, 311, 315, 324, 326, 348-49, 363, 397, 401, 469, 504]. Indeed, Bowns continued to cut herself as late as July and August 2012, despite Dr. Lenhart's observations during this period that her medication regimen was effective and her moods were more stable. [*Id.*, Tr. 455, 459-60, 464].

At Bowns's first appointment with Dr. Lenhart, she complained that at 5 feet tall she weighed 101 pounds, when she believed she should weigh

92. [R. 11-7, Tr. 445]. Subsequent appointments showed her consistently weighing less than 100 pounds and she often reported not eating. [*Id.*, Tr. 455, 466, 491]. Additionally, she reported insomnia, daytime sleepiness, suicidal ideations, oddities of thought and behavior, (including that she could see dead people and ghosts, and third-party reports that she was acting out at her job and reporting to her coworkers that she had a sex addiction), and social isolation. [*Id.*, Tr. 442-45, 455, 491, 497, 499, 502]. Bowns alternated between being verbal, friendly and logical, to depressed, irritable and attention-seeking, with blunt or inappropriate affect. [*Id.*, Tr. 442-45, 455, 466, 491, 497, 499, 502].

Bowns was consistently observed as reacting poorly when confronted or when demands were placed on her. [*Id.*, Tr. 208, 242, 327, 341, 375, 456, 460, 485]. While she reported some friendships and boyfriends, she also reported social isolation, and providers noted the relationships she did have, and her reactions to them, were generally unhealthy. [*Id.*, Tr. 211, 217-18, 245, 248, 285, 301, 323, 329, 338-41, 344, 346, 348-50, 359, 363, 373, 390-92, 395, 397, 473, 476, 500]. Bowns often talked about being able to see dead people and ghosts, casting spells on people, levitating and being a vampire. [*Id.*, Tr. 208, 217, 240, 280, 478]. In September 2010, she was on the verge of being kicked out of school for lack of

11

attendance, and by October she was kicked out for falsifying a report about other students. [*Id.,* Tr. 320, 324]. In October 2011, she was removed from school again pending a doctor's note that she was not a danger to herself or others. [*Id.,* Tr. 322]. She was let go from a ten-hour-per-week job at Goodwill, obtained through the Opportunity Center, for excessive crying.[3] [R. 11-2, Tr.46-47; R. 11-7, Tr. 442, 500]. For a period of at least a year or more, she required the assistance of a behavioral aid up to 30 hours a week. [R. 11-7, Tr. 301, 303-304, 310].

The ALJ was wrong to disregard the diagnoses, observations and opinions of Dr. Lenhart, a trained psychiatrist.

> [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (citations and internal quotation marks omitted). Further, to the extent that Dr. Lenhart relied in part on Bowns's subjective complaints, he was acting within his

---

[3] The ALJ identified Bowns's work at Goodwill as evidence that she is capable of gainful employment, quibbling with Bowns's representation that it lasted two months instead of four. [R. 11-2, Tr. 28]. Regardless, the work was short-term and only ten hours per week, and she was unsuccessful. [R. 11-2, Tr.46-47; R. 11-7, Tr. 442, 500].

12

expertise as a trained psychiatrist. "[P]sychiatrists typically treat symptoms that are subjective and just rely on a patient's subjective descriptions to evaluate and diagnose the patient." *James v. Liberty Life Assur. Co.*, 582 Fed. Appx. 581, 588 (6th Cir. 2014). Since Dr. Lenhart's opinion was supported by the record, the ALJ should not have played doctor, substituting her own opinion for that of the treating physician. *Allen v. Comm'r of Soc. Sec.*, No. 12–15097, 2013 U.S. Dist. LEXIS 150236, *44–45, 2013 WL 5676254 (E.D.Mich. Sept. 13, 2013) *adopted by* 2013 U.S. Dist. LEXIS 149851, 2013 WL 5676251 (E.D.Mich. Oct. 18, 2013) (collecting cases).

The ALJ rejected Dr. Lenhart's opinion as being inconsistent with the record as a whole, but the Court agrees with Bowns that the ALJ selectively cited portions of the record that presented an unrealistically optimistic picture of Bowns's symptoms, activities of daily living, social interactions, and overall functioning. [R. 11-2, Tr. 27-28]. "Substantial evidence cannot be based on fragments of the record." *Laskowski v. Apfel*, 100 F. Supp. 2d 474, 482 (E.D. Mich. 2000).

For these reasons, the ALJ should have afforded Dr. Lenhart's opinion controlling weight, and this error is not harmless. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004). Affording Dr. Lenhart's

13

conclusions appropriate weight could result in Bowns's being found to have met or equaled either a childhood or adult listing.  *See e.g.* 20 C.F.R. pt. 404, subpt. P, appx. 1, §§ 12.04(C), 12.08(A)-(B), 112.00 *et seq.* Alternatively, it would necessitate a revised RFC that could render Bowns disabled.

Since the Court finds reversible error in the ALJ's weighing of Dr. Lenhart's opinion, and because appropriate consideration of this opinion will require reassessment of the ALJ's step three analysis, the Court does not reach Bowns's alternate arguments that the ALJ failed to properly assess equivalency of both the childhood and adult listings, although the Court does note for the record that the ALJ's failure to identify the childhood listings she considered or perform the proper "meet or medically equal" analysis constitutes error in and of itself.  See *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011); *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 858-59 (E.D. Mich. 2011) (collecting cases and applying *Reynolds* to conclude that functional equivalence analysis does not satisfy requirement to conduct proper meet or medically equal analysis).

Furthermore, while the Court agrees with Bowns that the ALJ's credibility determination and formulation of a hypothetical were not

14

supported by the record as a whole, those arguments are rendered moot because both issues will require reconsideration on remand in light of this recommendation.

### III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Bowns's Motion for Summary Judgment **[19]** be **GRANTED IN PART** to the extent it seeks remand and further consideration, but **DENIED IN PART** to the extent it seeks reversal and award of benefits, the Commissioner's Motion **[R. 22]** be **DENIED** and this case be **REMANDED** for further consideration consistent with this Report and Recommendation.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: June 15, 2015

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in**

16

**length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

  The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 15, 2015.

           s/Marlena Williams
           MARLENA WILLIAMS
           Case Manager